# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FUJIFILM SONOSITE INC., | No. 59504-4-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ORDER GRANTING MOTION TO PUBLISH |
| Respondent. | |

Respondent Washington State Department of Revenue filed a motion for publication of this court's opinion filed on August 19, 2025. After consideration, the court grants the motion. It is now

**ORDERED** that the opinion will be published.

**PANEL:** Jj. Maxa, Lee, Cruser

**FOR THE COURT:**

_____
CHIEF JUDGE

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FUJIFILM SONOSITE INC., | No. 59504-4-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J.—Fujifilm SonoSite Inc. appeals the trial court's order granting summary judgment to the Washington State Department of Revenue, sustaining an earlier assessment of manufacturing excise tax against SonoSite.

SonoSite argues that it substantially complied with a letter ruling from the Department of Revenue that exempted SonoSite from the manufacturing business and occupation tax, and it therefore qualifies for safe harbor from manufacturing tax liability. In the alternative SonoSite asserts that, even if the letter ruling does not create a safe harbor, SonoSite transferred its manufacturing functions to SonoSite Manufacturing LLC, a wholly owned subsidiary, and is therefore exempt from manufacturing business and occupation taxes.

We conclude that the order granting summary judgment was proper because (1) SonoSite did not adhere to the pertinent facts in its letter ruling request, so the letter ruling did not provide

safe harbor from manufacturer tax liability, and (2) the Department of Revenue properly classified SonoSite as a manufacturer.

FACTS

I. WASHINGTON BUSINESS AND OCCUPATION TAX

Washington imposes a business and occupation (B&O) tax on those engaging in business in the state. RCW 82.04.220(1).[1] To impose the tax, the government first determines what type of business activity a business engages in, then it determines which tax measure and rate applies. *Steven Klein, Inc. v. Dep't of Revenue*, 183 Wn.2d 889, 896, 357 P.3d 59 (2015).

Sales activities are taxed according to "gross proceeds of sales" and are taxed at either the retailing or wholesaling rate. Former RCW 82.04.250 (2010), .270. Resellers owe B&O taxes only on sales to Washington customers. *See* RCW 82.32.730. Manufacturing activities are taxed according to "the value of the products . . . manufactured," as measured by the manufacturer's " 'gross proceeds of sales.' " RCW 82.04.240; WAC 458-20-112. Manufacturers owe B&O tax on the gross proceeds of worldwide sales of goods manufactured in the state. *See* RCW 82.04.240 (tax owed "regardless of the place of sale or the fact that deliveries may be made to points outside the state"). A business that manufactures and then sells products to a reseller effectively owes taxes only under the manufacturing classification, because it is permitted a credit against its retailing and wholesaling B&O tax liability. RCW 82.04.440(2); former WAC 458-20-136(4)(a) (2010). This tax scheme encourages entities to divide their manufacturing and sales operations into separate entities to avoid state excise taxes on worldwide sales.

---

[1] RCW 82.04.220 has been amended since the events in this matter. Because these amendments do not affect our analysis, we cite to the current version. LAWS OF 2019, ch. 8, § 103; LAWS OF 2021, ch. 145, § 5.

## II. BACKGROUND

The material facts are not disputed. SonoSite is a Washington corporation that manufactured and sold sophisticated medical imagining devices. Because it operated as a manufacturer and a seller, SonoSite was taxed as a vertically integrated business with multiple tax classifications. FUJIFILM Holdings Corporation (Holdings), an imaging equipment manufacturer and seller, acquired SonoSite in 2012.

Prior to the acquisition, SonoSite reorganized to separate its selling and manufacturing activities. SonoSite intended to create a new wholly owned subsidiary that would manufacture devices, which SonoSite would buy and resell. The manufacturing entity would be subject to the B&O tax as a manufacturer and wholesaler of imaging equipment, and SonoSite would be subject to B&O Tax as a wholesaler or retailer. The reorganization would allow SonoSite to calculate its B&O tax obligations based solely on its Washington sales, and avoid B&O retail and wholesale taxation on worldwide sales. *See* former WAC 458-20-136(4)(a); RCW 82.04.240; RCW 82.32.730. Accordingly, SonoSite Manufacturing LLC (the subsidiary) was formed in 2011 as a wholly owned subsidiary of SonoSite prior to Holdings' final acquisition of SonoSite in 2012.

## III. LETTER RULING

To ensure SonoSite understood its B&O tax liability, a representative of SonoSite and the subsidiary requested a tax ruling on a set of facts that it believed would be present after the merger. Specifically, the request for a ruling noted that the subsidiary would purchase raw materials, manufacture goods, and then sell finished goods to SonoSite for cost plus markup. It further provided that SonoSite and the subsidiary would maintain separate accounting books. SonoSite noted that it would provide administrative support to the subsidiary, including "[e]xecutive

management, accounting, finance, human resources, . . . [i]nventory management and certain raw materials purchasing services." Clerk's Papers at 315. SonoSite also intended to negotiate purchase contracts that would "allow [the subsidiary] to purchase raw materials at pre-negotiated and/or discounted prices." *Id.*

The Washington Department of Revenue (DOR) issued a letter ruling that confirmed, based on the facts as SonoSite presented, SonoSite would no longer be taxed as a vertically integrated business. Instead, SonoSite would be reclassified as a retailer or wholesaler, and owe B&O taxes on its resale of the finished goods to customers in Washington. The subsidiary would be classified as a manufacturer and wholesaler, and would owe B&O taxes on the value of goods sold to SonoSite. SonoSite would be required to pay B&O tax for any administrative services paid for by the subsidiary.

## IV. AUDITS

This case concerns DOR's assessment of SonoSite's tax liability for the tax period between January 1, 2012, and June 30, 2015. After issuing the letter ruling, DOR conducted a number of partial audits in response to SonoSite's requests for tax refunds and deferrals. One audit overlapped with the tax period in this case by 10 months. SonoSite requested a refund of sales and use tax paid on manufacturing machinery and equipment. The tax refund was specifically for manufacturers and processors for hire, but the request did not mention the subsidiary. After reviewing SonoSite's sales invoices showing that manufacturing equipment was billed to and paid for by SonoSite, DOR concluded SonoSite was eligible for the exemption as a manufacturer purchasing manufacturing machinery and equipment. DOR refunded SonoSite for sales tax it paid on manufacturing equipment during the relevant tax period.

DOR conducted three additional partial audits that fully overlapped with the tax period. SonoSite requested a deferred payment totaling $10,775,000 in " 'sales and use taxes imposed on the construction, expansion, or renovation of qualified buildings' " that were used for manufacturing or research and development. *Id.* at 20 (quoting WAC 458-20-24003(4)). The requests, including sales invoices and lease agreements submitted to DOR for evaluation, made no reference to the subsidiary. After reviewing SonoSite's documentation and touring its facilities, DOR concluded SonoSite was eligible for the High Technology Sales and Use Tax Deferral Program, ch. 82.63 RCW, and allowed it to defer payment.

DOR then audited SonoSite for the full tax period between January 1, 2012, and June 30, 2015. DOR concluded the facts represented in SonoSite's ruling request did not correspond to the facts established in the audit, so it was not bound to the letter ruling. Specifically, where SonoSite intended the entities to maintain separate accounting books, DOR found that all bank accounts were in SonoSite's name for the first two years of the tax period. The subsidiary opened a bank account in January 2014 and used the account to pay payroll taxes and some research and development related business taxes. Salaries, wages, and all remaining costs for manufacturing and research and development continued to be funded through SonoSite's accounts.

Next, DOR identified a lack of documentation between SonoSite and the subsidiary. The entities executed two contracts that were backdated. The "Sales and Supply Agreement" established that SonoSite was a purchaser, the subsidiary was the supplier, and required SonoSite pay all invoices no later than 30 days from the date of shipment. However, the subsidiary did not create or send sales invoices to SonoSite. The "Contribution, Assignment and Assumption Agreement" purported to transfer all of SonoSite's right, title, and interest in certain

6

manufacturing-related accounts to the subsidiary and assigned physical assets and contracts to the subsidiary. Under the agreement, the subsidiary was meant to pay and perform all of the liabilities and obligations of SonoSite. However, SonoSite continued to attribute costs and revenue centers to SonoSite rather than the subsidiary.

As supported by the earlier audits, DOR found that the sales invoices for purchases of raw materials for manufacturing operations also listed SonoSite as the billing and shipping customer. SonoSite and the subsidiary did not have any contract detailing the sale of raw materials to the subsidiary, and SonoSite did not report any income from the sales of raw materials to the subsidiary.

DOR concluded that the subsidiary was operating as a division of SonoSite rather than a separate taxable entity. It assessed a tax in the amount of $4,783,435.42, and applied taxes already paid by the subsidiary to reduce the tax liability.

## V. PROCEDURAL HISTORY SUMMARY JUDGMENT IN SUPERIOR COURT

SonoSite appealed DOR's assessment to DOR's Administrative Review and Hearings Division, which upheld the assessment. SonoSite paid $2,748,470.65 in manufacturing B&O tax and related penalties and interest, and filed a refund action under RCW 82.32.180.

The parties filed cross summary judgment motions. The trial court concluded that "SonoSite [was] not entitled to rely on the letter ruling because it did not conduct its business in the matter addressed by the letter ruling." Verbatim Rep. Proc. (VRP) at 18. It further determined that DOR "properly assessed the tax on SonoSite because it did not transfer all the manufacturing activities to [the subsidiary]. And while there were some steps taken, they were not sufficient to

7

effectuate a transfer during the tax period at issue." *Id.* The trial court granted DOR's motion for summary judgment and denied SonoSite's motion for summary judgment. SonoSite appeals.

## DISCUSSION

The principle issue in this case is whether, as a matter of law, SonoSite was properly assessed B&O taxes as a manufacturer-reseller rather than a mere reseller. SonoSite advances two primary arguments: First, SonoSite contends that DOR instructed it to pay taxes as a mere reseller in a letter ruling, and therefore SonoSite is entitled to safe harbor from paying B&O taxes as a manufacturer-reseller. Second, SonoSite argues that if it cannot rely on the letter ruling, the trial court erred in concluding it was a manufacturer under Washington tax law.

### I. STANDARD OF REVIEW

We review an order for summary judgment de novo, performing the same inquiry as the trial court. *FPR II, LLC v. Dep't of Revenue*, 16 Wn. App. 2d 706, 713, 482 P.3d 320 (2021). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

As the taxpayer seeking a refund of the B&O taxes it paid, SonoSite has the burden of showing that DOR incorrectly assessed the tax and that it is entitled to a refund. RCW 82.32.180; *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011). How the B&O tax statutes apply to the facts of this case is a question of law reviewed de novo. *Wash. Imaging Servs.*, 171 Wn.2d at 555.

### II. LETTER RULING

SonoSite argues that the trial court erred by granting DOR's motion for summary judgment because the letter ruling entitled SonoSite to judgment as a matter of law. DOR responds that

SonoSite did not comply with the pertinent facts of the letter ruling, and therefore the letter ruling was not binding in its determination of either SonoSite or the subsidiary's tax liability. We agree with DOR.

Taxpayers have the responsibility to "[k]now their tax reporting obligations, and when they are uncertain about their obligations, seek instructions from the department of revenue." RCW 82.32A.030. But taxpayers also have the "right to rely on specific, official written advice and written tax reporting instructions from the department of revenue." RCW 82.32A.020(2).

At the time SonoSite requested the letter ruling, DOR required taxpayers to submit a ruling request "in writing, contain[ing] all pertinent facts concerning the question presented." Former WAC 458-20-100(2)(b) (2005). Additionally, the letter ruling "must state all pertinent facts upon which the opinion is based . . . It will remain binding until the facts change." *Id.*

SonoSite contends the trial court erred in concluding SonoSite had to prove *every* fact represented in the letter ruling to rely on it for safe harbor from B&O manufacturing tax assessment.[2] SonoSite contends that it did not misrepresent *pertinent* facts, and therefore it can rely on the letter ruling. We conclude that, based on the undisputed facts, SonoSite did not effectuate the pertinent facts it provided in the letter ruling request. Specifically, SonoSite did not cease to operate as a manufacturer, as evidenced by the fact that it claimed tax refunds and deferrals available only to manufacturers. Furthermore, SonoSite did not maintain separate accounting

---

[2] SonoSite mischaracterizes aspects of the trial court's holding. The trial court concluded SonoSite was "not entitled to rely on the letter ruling because it did not conduct its business in the manner addressed by the letter ruling." VRP at 18. It did not address whether SonoSite needed to prove every fact or only pertinent facts. SonoSite conflates the trial court's holding regarding the letter ruling with its holding that DOR "properly assessed the tax on SonoSite because it did not transfer all the manufacturing activities to [the subsidiary]." *Id.*

records or bank accounts for the different entities, and there were no invoices to indicate sales from the subsidiary to SonoSite. Though SonoSite had intended the subsidiary to purchase the raw materials, the accounting records indicated that SonoSite was purchasing raw materials and there were no records of the subsidiary acquiring raw materials from SonoSite.

While SonoSite contends that these facts are not pertinent because they do not have any bearing on which entity performed the manufacturing activities, RCW 82.04.110(1) also defines a manufacturer by its ownership of the raw materials used in manufacturing. The facts misrepresented in the letter ruling are pertinent to which entity owned the raw materials used for manufacturing. Moreover, SonoSite must have believed that the facts were pertinent because it included them in its ruling request. The undisputed facts support the conclusion that during the relevant tax period, neither SonoSite nor the subsidiary was operating as they portrayed in the letter ruling request. Therefore, SonoSite is not entitled to safe harbor from B&O manufacturing tax liability and the trial court did not err in granting DOR's motion for summary judgment.

### III. TAX CLASSIFICATION

SonoSite argues that the trial court erred by granting DOR's motion for summary judgment, even assuming that the letter ruling did not create a safe harbor, because (1) the subsidiary, rather than SonoSite, was a manufacturer as a matter of law, and (2) SonoSite and the subsidiary were entitled to separate entity status.

We conclude that SonoSite cannot meet its burden to show DOR incorrectly assessed the tax. SonoSite's records indicate that it was the owner of the raw materials used in the manufacturing process, and DOR had the authority to disregard the entities' separate entity status to properly apply B&O manufacturing tax.

A. MANUFACTURER STATUS

First, SonoSite contends the trial court erred in granting summary judgment because it failed to determine if the subsidiary was performing manufacturing activity. SonoSite contends that even though it did not transfer all aspects of the manufacturing component of its business to the subsidiary, it did enough for the subsidiary to qualify as a manufacturer under RCW 82.04.110(1). According to SonoSite, ownership of materials "would be helpful" but is "not dispositive" in determining which entity was properly classified as the manufacturer. Br. of Appellant at 19. DOR responds that whether the subsidiary engaged in manufacturing activity is irrelevant because the tax liability of SonoSite—not the subsidiary—is the issue before the court. And, DOR further contends, ownership is a necessary element of manufacturer status so, even if SonoSite did transfer certain aspects of the manufacturing activity to the subsidiary, SonoSite was properly classified as a manufacturer because it retained ownership of the raw materials. We agree with DOR.

Under the Washington tax code, a manufacturer is "every person who, either directly or by contracting with others for the necessary labor or mechanical services, manufactures for sale or for commercial or industrial use from his or her own materials or ingredients any articles, substances, or commodities." RCW 82.04.110(1). The classification depends on the "(1) ownership of materials and (2) fabrication of goods from those materials, either through (a) the manufacturer's own labor or (b) the labor of one contracted for that purpose by the manufacturer." *Am. Sign & Indicator Corp. v. State*, 93 Wn.2d 427, 431-32, 610 P.2d 353 (1980).

The parties agree that the process of fabricating the imaging equipment constitutes manufacturing activity. Because the statute permits an owner or an outside entity to conduct the

manufacturing activity, whether SonoSite or the subsidiary was conducting the activity is irrelevant for the purposes of assessing SonoSite's B&O manufacturing tax classification. *See* RCW 82.04.110(1). Instead, the determinative issue is whether SonoSite or the subsidiary owned the resources necessary for the manufacturing process. If the subsidiary owned them, as SonoSite contends, the subsidiary could properly be classified as a manufacturer. If SonoSite owned them, DOR argues that SonoSite would be the manufacturer and the subsidiary would at most be classified as a processor for hire, or contracted labor to conduct the manufacturing process on behalf of SonoSite.

Here, the undisputed evidence shows that SonoSite owned the raw materials used in production. The records SonoSite provided to DOR showed that SonoSite was purchasing the raw materials in its own name. First, the invoices and documentation showing nearly all of the purchases of raw materials, manufacturing equipment, and leasehold improvements were made by SonoSite and no records demonstrated a transfer to the subsidiary. Second, SonoSite sought and was approved for tax refunds and deferrals that were statutorily limited to manufacturers. Finally, SonoSite and the subsidiary did not maintain separate accounting books and failed to record intercompany transfers that demonstrated the subsidiary was operating as a separate entity. Because SonoSite cannot provide documentation demonstrating that it transferred ownership of manufacturing processes or raw materials to the subsidiary, it is unable to meet its burden to show

that it did not own the raw materials used in the manufacturing process.[3] Therefore, we conclude that, as a matter of law, SonoSite was appropriately classified as a manufacturer for B&O tax liability.

B. SEPARATE ENTITY STATUS

SonoSite argues that the trial court erred by granting DOR's motion for summary judgment because DOR and the trial court disregarded the subsidiary and SonoSite's separate entity status. SonoSite contends that because DOR does not have authority to disregard the separate entity status of the subsidiary, by doing so, it required both SonoSite and the subsidiary to do more than the law required to maintain separate tax status.

An entity's tax liability is determined irrespective of its relation or affiliation to any other parent or subsidiary company, including whether there are common officers, employees, facilities, or stock ownership. WAC 458-20-203 (Rule 203). This is because separate entities are treated as separate taxpayers; each entity must pay its own tax and there is no provision that allows affiliated entities to file a consolidated return. *Id.* Transactions between the entities are recorded for tax purposes, not eliminated or disregarded. *Id.* However, if affiliated entities do not maintain separate

---

[3] Sonosite contends that backdated agreements between itself and the subsidiary reflect a ratification of their oral agreement that the subsidiary would be solely responsible for manufacturing. However, even assuming that these written agreements represent oral agreements entered at the start of the tax period, the record demonstrates that the entities did not effectuate the relevant terms of the agreements. The subsidiary did not create or send sales invoices to SonoSite as contemplated by the Sales and Supply Agreement. Nor did the record establish that SonoSite transferred all of its right, title, and interest in certain manufacturing-related accounts to the subsidiary, or assigned physical assets and contracts to the subsidiary as contemplated by the Contribution, Assignment, and Assumption Agreement. Under the agreement, the subsidiary was meant to pay and perform all of the liabilities and obligations of SonoSite. However, SonoSite continued to attribute costs and revenue centers to SonoSite rather than the subsidiary. Because the record establishes that the entities never effectuated the relevant terms, the agreements do not compel a conclusion that SonoSite was improperly classified as a manufacturer.

records or do not otherwise distinguish their roles in whatever business activity they conduct, the relationship between entities becomes material to how their respective tax classification should be determined. *See Am. Sign*, 93 Wn.2d at 436 (considering relationship between parent and subsidiary corporations to determine tax classifications).

While Rule 203 generally requires DOR to establish classifications without considering the relationship between entities, such an inquiry is necessary here. Whether the subsidiary or SonoSite was a manufacturer depended on the ownership of the materials and manufacturing equipment used during the manufacturing process. And SonoSite and the subsidiary did not maintain separate books or otherwise distinguish their roles. Accordingly, DOR did not err in considering the relationship between SonoSite and the subsidiary in determining whether SonoSite was a manufacturer.

## CONCLUSION

We conclude that although SonoSite took some steps to transfer its manufacturing functions to the subsidiary, it did not put into effect the pertinent facts it supplied in its letter ruling request and was therefore not entitled to safe harbor for manufacturing tax obligations. Furthermore, we conclude that DOR properly classified SonoSite as a manufacturer, based on its ownership of the materials and machinery used in its manufacturing processes. And DOR did not err in considering the relationship between SonoSite and the subsidiary in determining whether SonoSite was a manufacturer because SonoSite and the subsidiary did not maintain separate books or otherwise distinguish their roles. Because the letter ruling was not binding and because DOR properly classified SonoSite as a Manufacturer, the trial court did not err by granting summary judgment in favor of DOR.

No. 59504-4-II

We affirm the trial court's order granting DOR's motion for summary judgment and denying SonoSite's motion for summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

MAXA, J.

LEE, J.